GREAT WESTERN PETROLEUM CORPORATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 111677. Promulgated February 23, 1943.

*Melvin S. Huffaker, Esq.,* for the respondent.

#### OPINION.

BLACK, *Judge:* The Commissioner has determined a deficiency of $838.06 in petitioner's income tax for the year 1938. The deficiency is based upon several adjustments made by the Commissioner in petitioner's net income as disclosed by its income tax return filed for the calendar year 1938 with the collector of internal revenue for the district of Michigan. The only one of these judgments which the petitioner contests is adjustment (c), by which the Commissioner adds to petitioner's net income $8,231.61 representing intangible drilling and development cost, which petitioner deducted in 1938 but which the Commissioner has disallowed on the ground that petitioner should have deducted this amount from its income tax return

filed for the year 1937. The Commissioner explained adjustment (c) in his deficiency notice as follows:

(c) Deduction was claimed for intangible drilling and development costs of Dobler #5 well, of which $8,231.61 was incurred in the taxable year 1937 and is disallowed.

It is held that as you have elected to expense your intangible drilling costs and as your books are kept on the accrual basis the amount expended in connection with the drilling of wells should be deducted in the year in which the expense was incurred.

Petitioner by an appropriate assignment of error contests this action of the Commissioner.

The facts have been stipulated and we adopt them as our findings of fact. The following summarization of these facts will suffice for this opinion:

The petitioner is a corporation, with its principal office in Bay City, Michigan. Petitioner was organized under the laws of the State of Michigan and is now and has been since March 27, 1935, engaged in the business of prospecting for and the production of oil and gas.

The petitioner filed its income tax returns on the accrual basis, and from the beginning petitioner elected to charge off intangible drilling costs as expense rather than to capitalize them.

Petitioner filed income tax returns for the years 1935, 1936, 1937, and 1938, on which no income tax was shown as being due.

On November 19, 1936, petitioner commenced the drilling of what is known as the William Keef No. 1 well, which was completed as a producer on January 20, 1937. During the drilling of this well the expenses appertaining thereto were carried on petitioner's books in a "Work in Progress" account, and in 1937 petitioner charged all of the intangible drilling costs, both those incurred in 1936 and those in 1937, into expense. ' Petitioner has drilled a number of wells and has consistently followed this practice of carrying such items regarding the costs of each of such wells in a "Work in Progress" account, and upon the completion of same has then expensed the item.

On October 8, 1937, petitioner commenced drilling what is known as its Dobler No. 5 well. This well was completed as a "producer" on January 8, 1938. In 1937 intangible drilling and development costs were incurred in the drilling of this well in the amount of $8,175.11 and were carried as "Work in Progress" through the year ending December 31, 1937, and until the well was completed on January 8, 1938. In the year 1938, upon the completion of this well, the intangible drilling and development costs of $8,175.11 incurred in 1937 were expensed and taken as a deduction on petitioner's income tax return filed for the year 1938.

The parties have stipulated that:

It is the general practice throughout the industry that expenses pertaining to wells in the process of drilling are carried in a "Work in Progress" account, whether the prospecting company is on a cash or accrual basis until the well is either completed as a producing well or a dry hole.

The respondent takes the position the intangible development costs in the case of oil and gas wells which may be charged to expense under article 23(m)-16 of Regulations 101 are the costs in the year incurred, not the costs of completed wells.

The petitioner takes the position that intangible devolpment costs in the case of oil and gas wells which may be charged to expense under article 23(m)-16 of Regulations 101 may be so charged in the year in which the drilling is completed and it is determined whether the well is a producer or a dry hole.

We agree with the position taken by the respondent. Both parties agree that the precise question here involved has not heretofore been decided by the Board of Tax Appeals or by the courts. So far as we have been able to find, that is a correct statement. There is no statute conferring upon a taxpayer the right of election to either capitalize the intangible drilling costs of an oil well or to charge them to expense. Such privilege is conferred by certain provisions of the Treasury regulations. The applicable provisions of Treasury Regulations 101, Revenue Act of 1938, are printed in the margin.[1]

Article 23(m)-16 of Regulations 94, applicable to the Revenue Act of 1936, is the same as that printed in the margin from Regulations 101.

Mertens' Law of Federal Income Taxation, sec. 24.47, vol. 4, in speaking of the election which is given taxpayers as to intangible drilling expenses by the Treasury Regulations, says:

---

[1] ART. 23(m)-16. *Charges to capital and to expense in the case of oil and gas wells.*—(a) Items chargeable to capital or to expense at taxpayer's option:

(1) Option with respect to intangible drilling and development costs in general: All expenditures for wages, fuel, repairs, hauling, supplies, etc., incident to and necessary for the drilling of wells and the preparation of wells for the production of oil or gas, may, at the option of the taxpayer, be deducted from gross income as an expense or charged to capital account. * * *

(2) Option with respect to cost of nonproductive wells: In addition to the foregoing option the cost of drilling nonproductive wells at the option of the taxpayer may be deducted from gross income for the year in which the taxpayer completes such a well or be charged to capital account returnable through depletion and depreciation as in the case of productive wells.

*         *         *         *         *         *         *

(d) This article does not grant a new option or election. Any taxpayer who made an election or elections * * * is, by such election or elections, bound with respect to all optional expenditures whether made before January 1, 1938, or after December 31, 1937, in connection with oil and gas wells. * * * a taxpayer who has never made expenditures for a nonproductive well prior to the first taxable year beginning after December 31, 1937, must make an election as to the cost of such wells in the return for the first taxable year in which the taxpayer completes such a well. Any election so made is binding for all subsequent years. * * *

Development Expenditures in case of Oil and Gas Wells.—General. In developing oil and gas properties the producer must make three distinct types of expenditures. He must pay for the clearing of the site of the well, the digging of a sledge pit, erecting the derricks and tanks, laying lines for water if it is not available at the site, and then pay the wages, full repairs, etc. necessary to drill the hole. These expenditures are generally termed intangible drilling and development costs, and the taxpayer is given an option, exercisable in the first year in which he makes such expenditures, either to charge them off as expenses against gross income *in the year in which incurred,* or to capitalize them and recover them by depreciation and depletion. [Italics supplied. The author then goes on and describes two other classes of expenditures which are capital in their nature and are not needed here.]

The expenditures which are involved in the instant case are of the kind described by the author in the above quotation. They were clearly incurred in the year 1937, and, inasmuch as petitioner kept its books and filed its income tax returns on an accrual basis, these intangible drilling costs to the extent of $8,175.11 for the year 1937 must be deducted in the year in which they were incurred, namely, the year 1937, and not in the year 1938, when Dobler No. 5 well was completed.

It should at this juncture be pointed out that petitioner was not using the "long term" contract method of accounting permitted to taxpayers under certain conditions. See art. 42–4, Regulations 101. Cf. *Rowan Drilling Co.,* 44 B. T. A. 189, issue IV. Petitioner was not in the contracting business and makes no claim that it is entitled to use the "long term" contract method of accounting.

The argument of petitioner used in its brief, that it should be allowed the deduction claimed in the year 1938, although admittedly the expenses were incurred in 1937, is that petitioner could not tell in 1937 whether the well which it was drilling in that year would be a producer or a dry hole, and therefore it was justified in carrying on its books the $8,175.11 as "Work in Progress" through the year ending December 31, 1937, and until the well was completed on January 8, 1938.

Petitioner bases this contention upon option (2) of the Treasury regulations printed in the margin. In dealing with this contention of petitioner it should be remembered that option (2) is an additional option which is to be applied only under certain conditions, namely, when a dry hole is drilled. We have no such condition in the instant case because petitioner's Dobler No. 5 well, which was completed January 8, 1938, was a producer and not a dry hole. Therefore, it seems clear that the "Option with respect to intangible drilling and development costs in general" provided by (1) of the Treasury regulations applies and petitioner, using the accrual system in keeping its accounts, must deduct these expenses in the year in which they were incurred, namely, 1937.

In speaking of the two separate options granted by the Treasury regulations, Paul and Mertens, in their Law of Federal Income Taxation, vol. 2, footnote 13 to section 21.41, say:

It will be noted that separate options are granted by this regulation with respect to productive and nonproductive wells. (See IT 1698, CB II-1, p. 117.) One option relates to *productive* and the other to *nonproductive* wells. If a well proves productive the taxpayer is bound by his election to treat the expenses mentioned in the regulation as capital or expense; but if a well proves unproductive he has a further option—an option within an option. Notwithstanding the fact that he has previously charged the expense of the well to the capital account, the taxpayer may, if the well proves unproductive, charge off the amount capitalized. In this event he is proceeding in true effect on the theory that the capital set up has been lost and the principles of loss rather than depreciation are the true governing principles.

Petitioner in the instant case in years prior to the taxable year had elected to charge off as deductible expenses the intangible drilling costs of its oil wells and was proceeding under option (1) granted in the regulations. For reasons we have already stated, petitioner was not entitled to use the option within an option provided by option (2) of the regulations because Dobler No. 5 well was a producer and not a dry hole. Therefore, petitioner, being on the accrual basis, must take its deduction for the $8,175.11 expenses involved in the year when such expenditures were incurred, which was 1937.

In his determination of the deficiency the Commissioner disallowed the sum of $8,231.61 as being the amount of intangible drilling costs which petitioner improperly deducted as expenses for 1938. It has been stipulated by the parties that of the intangible drilling costs incurred by petitioner in drilling its Dobler No. 5 well, $8,175.11 was incurred in 1937. This is the amount which should be disallowed as a deduction in a recomputation under Rule 50.

We do not think the situation as to the basic question is changed by reason of the fact that the parties have stipulated that:

It is the general practice throughout the industry that expenses pertaining to wells in the process of drilling are carried in a "Work in Progress" account, whether the prospecting company is on a cash or accrual basis until the well is either completed as a producing well or a dry hole.

When a taxpayer is on an accrual basis a postponement of the deduction of expenses incurred in a particular year is not obtained by placing such expenses in a reserve account. Cf. *Rogers, Brown & Crocker Bros., Inc.*, 32 B. T. A. 307. On this issue we sustain the Commissioner.

*Decision will be entered under Rule 50.*